**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 12-3984

———————

MICHAEL L. JONES
a/k/a Laquan Robinson,
Appellant

v.

PERRY PHELPS; ATTORNEY GENERAL OF THE STATE OF DELAWARE

———————

On Appeal from United States District Court
for the District of Delaware
(D. DE. No. 1-09-cv-00457)
District Judge: Hon. Gregory M. Sleet

———————

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 23, 2015

Before: FISHER, JORDAN and GREENAWAY, Jr., *Circuit Judges*.

(Opinion Filed: January 30, 2015)

———————

OPINION*

———————

---

 * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

FISHER, *Circuit Judge*.

Michael Jones was convicted of three counts of first-degree murder and other related charges and was sentenced to life in prison. After exhausting his state-court remedies, he filed an application under 28 U.S.C. § 2254 in the United States District Court for the District of Delaware. In relevant part, he claims that violations of his rights to a speedy trial and an impartial trial judge justify the issuance of a writ of habeas corpus. The District Court denied his application, and we will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts that are necessary to our analysis.

In January 2001, a Delaware grand jury indicted Jones on three counts of first-degree murder and other related charges. Jones was arrested in September 2001 in North Carolina and extradited to Delaware. Although his trial was initially scheduled to start in November 2002, a number of events resulted in a delay of the trial. Because prosecutors indicated they would seek the death penalty, Jones's case and all other death penalty cases were stayed while the state courts determined Delaware's compliance with *Ring v. Arizona*, 536 U.S. 584 (2002). After the stay was lifted in January 2003, Jones's trial was rescheduled for November 2003 to accommodate a prosecutor's maternity leave. Then, because Jones successfully moved for new counsel immediately before his trial was to

2

begin, his trial was postponed to August 2004. And finally, because new counsel moved to preclude prosecutors from seeking the death penalty on the grounds that Jones was under eighteen at the time of the alleged crimes, the trial court postponed Jones's trial to consider the motion. After denying the motion, the court set Jones's trial date for January 2005.

A jury found Jones guilty on each charge and, after additional penalty proceedings, recommended the death penalty. Jones then moved to disqualify the trial judge and for a new trial on the grounds that the judge had been overheard at a public restaurant criticizing Jones's counsel and stating that she would give Jones the death penalty. The trial judge admitted speaking about Jones's counsel at the restaurant but said she only expressed her concern that his performance would result in the jury voting to impose the death sentence; therefore, the trial court denied the motion. Because the United States Supreme Court held in *Roper v. Simmons*, 543 U.S. 551 (2005), that executing defendants who were juveniles when they committed their offenses was unconstitutional, the trial court sentenced Jones to life in prison.

Jones appealed his conviction to the Delaware Supreme Court. In relevant part, Jones argued that the trial court's denial of his motion to disqualify and for a new trial violated his right to due process of law. The Delaware Supreme Court affirmed his conviction and sentence. Jones filed a motion for postconviction relief in the Delaware Superior Court. In relevant part, Jones argued that his appellate counsel had been

3

ineffective for failing to argue that Jones was denied his right to a speedy trial. The Superior Court denied his motion, and the Delaware Supreme Court affirmed.

Jones then filed an application under 28 U.S.C. § 2254 for a writ of habeas corpus. He raised nine grounds for relief, including his speedy trial and judicial recusal claims. The District Court denied his application without a hearing. Jones filed a timely appeal, and we granted Jones a certificate of appealability on his speedy trial and judicial recusal claims.

## II.

The District Court had jurisdiction under 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. Because the District Court decided Jones's application on the state-court record and without an evidentiary hearing, we review the District Court's decision de novo, using the same legal standard the District Court used. *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013).

For any claim that the state courts adjudicated on the merits, a federal court may not grant relief unless the state-court decision was contrary to or an unreasonable application of clearly-established federal law as determined by the United States Supreme Court or unless the decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

III.

A.

The District Court held that Jones's speedy trial claim was procedurally defaulted; the parties present many arguments about whether it was indeed defaulted and, if so, whether we should excuse the default. However, the Delaware Superior Court adjudicated this claim on the merits and found that Jones was not entitled to relief. *See State v. Jones*, No. 9911016309, 2008 WL 4173816, at *8 (Del. Super. Ct. Sept. 3, 2008) (explaining that although Jones did not raise the speedy trial claim in his direct appeal, "since Jones has demonstrated cause for why this claim was not raised, the Court will address this argument on the merits"); *id.* at *13 ("The Court concludes that Jones' [sic] right to a speedy trial was not violated in this case. . . . Accordingly, the speedy trial violation claim does not provide a basis for postconviction relief."). Because this claim was adjudicated on the merits in the state courts, regardless of any default issues, that decision will ultimately be entitled to deference under § 2254(d).

In adjudicating the claim, the Superior Court correctly identified the governing United States Supreme Court precedent, *Barker v. Wingo*, 407 U.S. 514 (1972), and its four-factor approach. *State v. Jones*, 2008 WL 4173816 at *10. Accordingly, the decision is not contrary to clearly-established federal law.

We also conclude that the Superior Court reasonably applied *Barker* to the facts of this case. The court properly determined that the four-year delay between the indictment

5

and Jones's trial, the first factor, required consideration of the remaining three factors. The court reasonably determined that the second factor, the reasons for the delay, weighed "only slightly in Jones' [sic] favor." *Id.* at *11. Although much of the delay was attributable to the State due to the court's scheduling of the trial, the initial post-indictment delay—when Jones was not in Delaware—and the delay between November 2003 and August 2004 were reasonably attributable to Jones. Although Jones complains that the delay between November 2003 and August 2004 should not be attributable to him, he requested new counsel who could not be expected to come up to speed on a capital case in such a short time and who then filed a complex motion that required an evidentiary hearing. And the Superior Court could reasonably conclude the administrative stay on all death penalty cases was "a valid reason" that "should serve to justify appropriate delay," because the State was attempting to comply with Supreme Court precedent. *Barker*, 407 U.S. at 531.

The court also reasonably determined that the third factor, the defendant's assertion of his speedy trial right, weighed against Jones. Although Jones filed multiple motions for a speedy trial, he also repeatedly requested new counsel, which would have delayed the proceedings. Finally, the court also reasonably determined that the last factor, prejudice to the defendant, was neutral. The court understood the prejudice that comes from pretrial incarceration, but found that prejudice linked to the reasons for the delay.

6

For these reasons, the Superior Court's adjudication of this claim was not contrary to or an unreasonable application of clearly-established federal law.

B.

Jones's judicial recusal claim was adjudicated on the merits by the Delaware Supreme Court in his direct appeal, and that adjudication is entitled to deference under § 2254(d). The Due Process Clause only requires recusal when actual bias or "a serious risk of actual bias" exists. *E.g.*, *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 884 (2009). Delaware law on recusal is more generous: recusal is appropriate when actual bias exists or an appearance of bias sufficient to cause doubt as to the trial judge's impartiality exists. *Los v. Los*, 595 A.2d 381, 384-85 (Del. 1991). Because the state courts applied a more generous standard to Jones's judicial recusal claim, the state-court decision was not contrary to clearly-established federal law.

The Delaware Supreme Court also did not unreasonably apply clearly-established federal law to Jones's claim. The court reasonably determined that the trial judge's description of her comments at the restaurant was correct: she expressed that she was disappointed with Jones's counsel's performance, that she believed the jury would vote to impose the death penalty, and that she would probably have to impose the death penalty as a result. *Jones v. State*, 940 A.2d 1, 19 (Del. 2007). Based on this understanding of the trial judge's comments, the court reasonably determined that no actual bias existed and that there was insufficient appearance of bias to doubt the judge's impartiality, let alone a

7

serious risk of actual bias. *Id.* Accordingly, Jones is not entitled to relief on his judicial recusal claim.

IV.

For the reasons set forth above, we will affirm the order of the District Court denying Jones's application under 28 U.S.C. § 2254.